IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

|  |  |  |
|---|---|---|
| RONALD GLEN SHAW, | ◊ | |
| | ◊ | |
| Petitioner, | ◊ | |
| | ◊ | |
| vs. | ◊ | No. 06-2254-B/V |
| | ◊ | |
| BRUCE PEARSON, | ◊ | |
| | ◊ | |
| Respondent. | ◊ | |
| | ◊ | |

_____

ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2241
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
ORDER DENYING AS MOOT MOTION FOR RELEASE ON BAIL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

_____

On April 25, 2006, Petitioner Ronald Glen Shaw, Bureau of Prisons inmate registration number 08148-042, an inmate at the Federal Correctional Institution in Memphis, filed a pro se petition pursuant to 28 U.S.C. § 2241 (Docket Entry ("D.E.") 1), along with a motion seeking appointment of counsel (D.E. 2). In response to an order issued on May 4, 2006 (D.E. 3), Petitioner paid the habeas filing fee on May 25, 2006. On May 31, 2006, the Court issued an order directing Respondent to file a response to the petition. (D.E. 4.) Respondent responded to the petition on July 7, 2006 (D.E. 7),[1] and Petitioner filed a reply on July 26,

---

[1] Respondent is reminded that each exhibit should be separately indexed as a unique attachment. Electronic Case Filing Attorney User Manual for the
(continued...)

2006 (D.E. 8). On September 18, 2006, Shaw filed a document, entitled "Motion for Judicial Notice of Adjudicative Facts, Rule 201, Fed.R.Evidence; and Motion for Summary Judgment, Rule 56(a) and (e), Fed.R.Civ.Pro., with supporting affidavit" (D.E. 9), and Respondent filed a response on October 18, 2006 (D.E. 10). On December 14, 2006, Petitioner filed a motion for release on bail (D.E. 11), and Respondent filed a response in opposition to that motion on December 27, 2006 (D.E. 12). On February 27, 2007, the Court issued an order denying the motion for appointment of counsel. (D.E. 13.)

In this petition, Shaw contends that he is entitled to release on parole. When Shaw was sentenced in 1982,

> [t]he Parole Commission and Reorganization Act of 1976 (PCRA) governed the terms of federal sentences. Pub.L. No. 94-233, § 2, 90 Stat. 219 (codified as amended at 18 U.S.C. § 4201-4218) (repealed 1984, effective 1987). The PCRA empowered the Parole Commission to evaluate prisoners' behavior and to award them early release on the basis of positive institutional adjustment. See 18 U.S.C. § 4206. Dissatisfied with this system, Congress passed the Sentencing Reform Act of 1984 (SRA). The SRA became effective on November 1, 1987, when it repealed and replaced the PCRA. Pub.L. No. 98-473, §§ 212, 218, 98 Stat.1987, 2027 (codified as amended at 18 U.S.C. §§ 3551-59, 3561-66, 3571-74, 3581-86, 28 U.S.C. §§ 991-98 (1988)). Under the SRA, parole was to be abolished, the Parole Commission was to be phased out, and prisoners were to serve uniform sentences under sentencing guidelines. See id.

---

[1]  (...continued)
Western District of Tennessee, at 25-26 (Apr. 2006). Although counsel for respondent will not be required to resubmit D.E. 7 in this case, it is, as presented, difficult to navigate.

Bledsoe v. United States, 384 F.3d 1232, 1233 (10th Cir. 2004); see also Lyons v. Mendez, 303 F.3d 285, 288-89 (3d Cir. 2002) (per curiam).

With respect to prisoners sentenced before the enactment of the SRA, § 235(b)(3) of the original SRA provided as follows:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this act, that is within the range that applies to the prisoner under the applicable parole guidelines. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

98 Stat. 1987, 2032 (1984).[2] Section 218(a)(5) abolished the Parole Commission, but § 235(b)(1)(a) kept the Parole Commission in existence for five years after the effective date of the SRA to consider parole applications from prisoners convicted of crimes committed before the effective date of the SRA who are still incarcerated after that date. Romano v. Luther, 816 F.2d 832, 837 (2d Cir. 1987).[3] The five-year period in § 235(b)(3) commenced

---

[2]   The USPC applied guidelines for evaluating applications for parole. The current version of those guidelines is codified at 28 C.F.R. § 2.20 (2006).

[3]   As the Second Circuit explained,

> [o]nce the new sentencing system begins on November 1, 1987, the role of the Parole Commission is eliminated as to prisoners sentenced under the new sentencing system. Congress recognized, however, that a transition period should be established during which the Parole Commission should discharge its final responsibilities toward those sentenced under the preexisting law.

(continued...)

3

running on November 1, 1987. Miller v. Story, 814 F.2d 320, 321 (6th Cir. 1987) (per curiam); see also Lightsey v. Kastner, 846 F.2d 329, 331-32 (5th Cir. 1988); cf. Romano, 816 F.2d at 837 (November 1, 1987 is not effective date, but is date on which running of five-year period commences). "Thus, as originally enacted, § 235(b)(3) required the USPC to set a parole release date for prisoners convicted prior to 1984 early enough to permit an appeal before November 1, 1992." Myles v. Dove, No. 05-5527, slip op. at 2 (6th Cir. Oct. 27, 2005); see also Farese v. Story, 823 F.2d 975, 976 (6th Cir. 1987) (per curiam) ("Section 245(b)(3) requires the Commission to decide on a parole date, under the applicable parole guideline, for every prisoner who will be in its jurisdiction the day before it is abolished. Also, the commission must decide early enough that a prisoner who appeals the decision can receive consideration of the appeal before the Commission is abolished."); Romano, 816 F.2d at 839-40.

As noted above, the original version of § 235(b)(3) required that the USPC set a release date within a prisoner's guideline range. "The effect of this provision was to modify 18 U.S.C. § 4206, which gave the Commission discretion to 'grant or deny release on parole notwithstanding the guidelines." Dunne v.

---

³ (...continued)
Id.

4

Olson, 67 F. App'x 939, 942 (7th Cir. 2003) (quoting 18 U.S.C. § 4206(c) (repealed)). However,

> [o]n December 7, 1987, section 235(b)(3) was amended to delete the clause requiring the Commission to set release dates within the guideline range. See Sentencing Act of 1987, Pub.L. 100-182, § 2(b)(2), 101 Stat. 1266 (1987) (1987 amendment). The amended section 235(b)(3) requires the Commission to set release dates "pursuant to section 4206 of Title 18 United States Code," which permits release dates outside the guideline range.

Lewis v. Martin, 880 F.2d 288, 290 (10th Cir. 1989). "The 1987 amendment [to § 235(b)(3)] merely restored [the Commission's] authority" under 18 U.S.C. § 4206 to set release dates outside the guideline range for good cause. Lyons, 303 F.3d at 290 n.7; see also Norwood v. Brennan, 891 F.2d 179, 182 (7th Cir. 1989).

The date for abolition of the Parole Commission has been extended by Congress several times. See Dunne, 67 F. App'x at 942 n.2; Borelli v. Page, No. 99-3234, 1999 WL 1188847, at *1 (10th Cir. Dec. 14, 1999) (citing Pub.L. No. 101-650, Title III, § 316, 104 Stat. 5089, 5115 (extension to ten years)); Pub.L. No. 104-232, § 2(a), 110 Stat. 3055 (extension to fifteen years); Cloyd v. Stine, Civil Action No. 6:05-667-DCR, 2006 WL 2038035, at *3 (E.D. Ky. July 19, 2006); Peltier v. United States Parole Comm'n, No. 05-3484, at *5 (D. Kan. Sept. 5, 2006). The Parole Commission is now set to expire on October 31, 2008. Furnari v. United States Parole Comm'n, No. 4:CV-06-0342, 2007 WL 1804340, at *11 (M.D. Pa. June 20, 2007) (citing United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub.L.No. 109-76, 119

Stat. 2035, § 2 (Sept. 29, 2005)); Cloyd, 2006 WL 2038035, at *3 n.5.

For purposes of this motion, the following facts appear to be undisputed:

> 1. On January 30, 1981, a grand jury sitting in the Northern District of Mississippi returned a five-count indictment against Shaw. The first count charged Shaw, a convicted felon, with receipt of a firearm that had been shipped in interstate commerce, in violation of 18 U.S.C. §§ 922(h) and 924(a). The second count charged Shaw with the premeditated murder of Terrell Johnson, Jr. on federal land, in violation of 18 U.S.C. § 1111. The third count charged Shaw with using a firearm to commit the murder in count 2, in violation of 18 U.S.C. § 924(c). The fourth count charged Shaw with assaulting Lachelle Johnson with the intent to commit murder, in violation of 18 U.S.C. § 113. The fifth count charged Shaw with using a firearm to commit the assault in count 4, in violation of 18 U.S.C. § 924(c). (D.E. 7, Ex. A.)
>
> 2. Shaw was convicted on all counts after a jury trial and, on March 5, 1982, a judgment was entered sentencing him to life imprisonment on count 2, a consecutive term of ten (10) years on count 3, a consecutive term of five (5) years on count 4, a consecutive term of three (3) years on count 5, and a consecutive term of three (3) years on count 1, for a total sentence of life imprisonment plus twenty-one (21) years. (Id., Ex. B.)
>
> 3. Shaw applied for parole in 1990 and, prior to the hearing, the United States Parole Commission (the "USPC" or "Commission") prepared a prehearing assessment to determine Shaw's parole guidelines. (Id., Ex. C.)[4] That document described Petitioner's offense as follows:

---

[4] The parole guidelines are set forth at 28 C.F.R. § 2.20 (2006). The guidelines "indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics. The time ranges specified by the guidelines are established specifically for cases with good institutional adjustment and program progress." 28 C.F.R. § 2.20(b). According to the statement of general policy, "[t]hese time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered." Id., § 2.20(c).

> On 12/26/80, at approximately 1:20am, subject used a high powered rifle to shoot and kill a 9 yr. old boy who was traveling with his mother and others [o]n the Natchez Trace Pkwy. The bullet also wounded the victim's sister, a 12 yr. old girl.
>
> The descendant [sic] lived approximately 3 hrs. before dying from loss of blood at a local hospital.
>
> The investigation revealed that subject was drinking alcoholic beverages prior to shooting the victim and he claimed that his gun accidentally discharged in the direction of the automobile. During his trial, he indicated that he did not know that the bullet from his rifle had actually hit the vehicle. He claimed to have been hunting deer at night (illegally) when the crime occurred.
>
> Mr. Shaw was arrested approximately 20 minutes after the shooting and charged with DUI and was held on suspicion of murder. Murder charges were formally filed after FBI ballistics tests determined that the bullet that killed the victim came from the gun seized by the subject. (Id.)

    4.   The Commission conducted an initial parole hearing on August 30, 1990. (Id., Ex. D.) At the hearing, Shaw "admit[ted] the offense and offered as mitigation that the shooting was an accident as he fell and the loaded rifle went off. [He admitted] he had been drinking at the time but was not drunk and state[d] he should not have been found guilty of first degree murder as it was an accident." (Id.) The panel further noted as follows:

> The panel notes that subject prior to the instant offense was serving a 10 yr state sentence for rape on which he served approximately 5 yrs and was released from that State of TN facility in either April or June, 1980 and the instant Federal offense occurred in December, 1980. The panel also notes that information in the file states that the state facility psychologist had advised that subject should not be released because release could result in his killing someone. Subject's institutional adjustment has been less than satisfactory as he has received 3 incident reports for possession/use of intoxicants, being in an unauthorized area,

7

>possession of money and introduction/use of narcotics or narcotic paraphernalia.
>
>. . . .
>
>It is noted that subject at today's hearing displayed no overt or verbal remorse or concern for the victims who were children or anyone else. As noted above, subject did express concern that in his judgment he should not have been charged with murder as in his judgment the shooting and killing was an accident.
>
>Today's panel was unable to agree on a recommendation with the primary examiner believing that the shooting/killing was a totally senseless act and without any known mitigating factors whatsoever to be considered. The primary examiner believes that it is appropriate because of the way the offense was committed and the vulnerability of the children involved who were innocent individuals riding in a vehicle with their mother, when the offense occurred. The primary examiner also believes that to release subject to the community would only offer him another opportunity to commit further criminal acts.
>
>The secondary examiner is recommending a 15 yr reconsideration hearing in believing that a complete psychiatric evaluation should be available to the Parole Commission prior to that hearing for review and consideration. The secondary examiner recognizes the extreme seriousness of the offense; however, believes that a 15 yr reconsideration hearing is appropriate at this time to facilitate a review of the psychiatric evaluation and certainly the subject should serve a significant amount of time for the behavior. (Id.)

5.   Shaw's case was referred to the National Commissioners, pursuant to 28 C.F.R. § 2.17, because of his life sentence. (Id., Ex. E.) On October 17, 1990, the Commission issued its decision "[c]ontinu[ing Petitioner] for a 15 year reconsideration hearing in August 2005 with a complete psychiatric evaluation available to the

Commission prior to the hearing." (Id., Ex. F.)[5] The Commission's reason for the decision was as follows:

> Your offense behavior has been rated as Category Eight severity because you murdered one individual and seriously assaulted another after being convicted of a felony and possessing a firearm. Your salient factor score is 7. You have been in federal confinement as a result of your behavior for a total of 119 months. Guidelines established by the Commission which consider the above factors indicate a guideline range of 120+ months to be served before release for cases with good institutional adjustment and program achievement. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because of the following aggravating factors: your offense involved the senseless shooting and murder of a nine year old boy and wounding of a 12 year old female who were traveling in an automobile with their mother on a parkway. You were released approximately six months from a 10 year state sentence for rape when you committed the instant offense. You are considered to be a danger to the community and are likely to commit further criminal behavior if released to the community. (Id.)

6. Although the Commission set a fifteen-year reconsideration hearing in Shaw's case, he was entitled to statutory interim hearings every twenty-four (24) months.[6] Shaw received an interim hearing on May 13, 1992, and the panel recommended that he not be released prior to the fifteen-year reconsideration hearing. (Id., Ex. G.) On June 3, 1992, the Commission ordered no change in its decision to "continue for a 15-year reconsideration hearing in August 2005." (Id., Ex. H.) At his next interim hearing on May 11, 1994, the panel again

---

[5] "Following the initial hearing, the Commission shall (1) set a presumptive release date (either by parole or by mandatory release within fifteen years of the hearing[)] (2) set an effective date of parole; or (3) continue the prisoner to a fifteen year reconsideration hearing pursuant to § 2.14(c)." 28 C.F.R. § 2.12(b).

[6] See 18 U.S.C. § 4208(h); 28 C.F.R. § 2.14. "The purpose of an interim hearing . . . shall be to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing." 28 C.F.R. § 2.14(a).

recommended that Shaw not be released prior to the fifteen-year reconsideration hearing. (Id., Ex. I.) The panel noted that, on July 8, 1992, Shaw was issued a misconduct report for making and possessing approximately ten (10) gallons of intoxicants. (Id.) In light of the incident, the panel also recommended that "[a]ny release to the community shall be with a special alcohol aftercare condition." (Id.) On May 29, 1994, the Commission issued its order to "continue to a 15-year reconsideration hearing, August 2005." (Id., Ex. J.) The Commission also adopted the Alcohol Aftercare Condition recommended by the panel. (Id.) The Commission issued orders on August 1, 1996; January 17, 2000; and May 19, 2002 making no change in its previous decision to continue Shaw until August 2005. (Id., Exs. K, L & M.)

     7.   Shaw received a fifteen-year reconsideration hearing on October 5, 2005. (Id., Ex. N.) The hearing examiner recommended that Shaw "[c]ontinue to a presumptive parole date on after the service of 478 months, October 26, 2020, with the Special Drug and Alcohol Aftercare Condition." (Id.) He explained that "[t]he subject has been in custody for nearly 25 years. It is believed that the severity of his crimes are such that he should continue to remain in custody for a much longer period of time." (Id.) A second examiner recommended continuing to a presumptive parole date on December 29, 2010, after service of 360 months. (Id.) A third examiner recommended continuing Shaw in custody with a reconsideration hearing in fifteen years, in October 2020, but without a presumption of release at that time. (Id.)

     8.   On October 15, 2005, the Commission issued its decision continuing Shaw to a fifteen-year reconsideration hearing in October, 2020. (Id., Ex. O.) Shaw appealed the decision to the Commission's National Appeals Board (the "Board") (id., Ex. P), arguing that his offense level should be Category Seven and not Category Eight. He also contended that he was entitled to a release date in 2010. (Id.) On March 1, 2006, the Board issued a notice of action affirming the Board's decision. (Id., Ex. Q.) The Board explained the reasons for its decision as follows:

> The Board has considered your appeal and agrees with the Commission's previous decision denying you parole and continuing you to a fifteen-year

10

reconsideration hearing. The Board finds no merit to your contentions that the Commission incorrectly applied the guidelines and that the Commission unlawfully made a decision outside of your parole guidelines.

In your appeal, you argue that the Commission incorrectly rated your offense Category Eight offense severity. On Appeal, the Board finds no merit to this claim. Review of your case reveals that the Commission rated your offense Category Eight after your initial hearing in 1990 because your offense involved the murder of a nine-year old boy. At your recent reconsideration hearing, the Commission reassessed your case, and the Commission found that a Category Eight offense severity rating was still warranted. After considering your appeal, the Board finds no new information that sheds light on your offense and finds nothing in the record to warrant a change in the Commission's initial categorization of your offense. You were convicted of first degree murder, and the facts of your offense illustrate that you intentionally fired a weapon which resulted in the killing of a nine-year old child and the wounding of a twelve-year old child.

You also claim that the Commission unlawfully made a decision outside of the guidelines. This claim has no merit. Because your offense has been rated Category Eight, your guidelines have no upper limit, and the Commission's decision is not a decision above your guidelines. In its notice of action to you, the Commission provided case-specific factors to you illustrating that your case received individual consideration, because the Commission's decision was more than 48 months above your minimum guideline range. See note to guideline matrix at 28 C.F.R. § 2.20. The Commission provided case specific factors of your case (the fact that you[r] offense involved first degree murder, the killing of a 9-year [old] child, and the wounding of a 12-year old child) and noted that these factors were serious and warranted imprisonment of 30 years. The Board has reviewed your case, notes that your case has received individualized consideration, and finds nothing in the record or your appeal to change the Commission's decision

>continuing you to another 15-year reconsideration hearing. (Id.)

In this petition, Shaw contends that his continued custody violates the Fifth and Eighth Amendments. In particular, Shaw first maintains that the Commission violated § 235(b)(3) by failing to set a release date. (D.E. 1 at 3-4.) He further asserts that the release date set in October 2005 improperly exceeded the life of the Commission. (Id. at 4.) This argument has been rejected by the numerous courts that have considered it. See Myles, No. 05-5527, slip op. at 2 ("[E]ven if Myles had a right under § 235(b)(3) to have the USPC set a parole release date for him, the USPC would have until October 31, 2005, less the necessary time for appeal, to set his release date. Since the appeal process 'normally requires about three months' . . . Myles's action was prematurely brought prior to August 2005.") (citation omitted); Lewis, 880 F.2d at 290 (§ 235(b)(3) "does not require the Commission to take immediate action on the release date of any prisoner. Rather, by its own terms, the subsection requires the Commission to set a release date for any prisoner within its jurisdiction sufficiently before November 1, 1992, to allow him time to appeal the decision."); Romano, 816 F.2d at 839-40; see also supra p. 4. In the event the life of the Commission is not extended at some time in the future, some provision will need to be made for any pre-SRA inmates. That issue is not before the Court, however, as the Commission will continue in existence until at least October 2008. See Furnari,

12

2007 WL 1804340, at *12 (the fact that the reconsideration hearing is set after the expiration of the USPC does not require that a release date be set now).

Shaw's claim that the Commission is required to set a release date within his guideline range is without merit for two reasons. First, the provision that the release date be within the guideline range was not in effect when Shaw committed his offense and was repealed on December 7, 1987, one month after the effective date of the SRA. See supra pp. 4-5. Moreover, as Respondent has pointed out (D.E. 7 at 9), Shaw's guidelines have no upper limit. See 28 C.F.R. § 2.20, Guidelines For Decisionmaking and Note regarding Category Eight offenses. It is, therefore, not possible to conclude that the reconsideration date of October 2020 exceeded Shaw's guideline range. Hackett v. United States Parole Comm'n, 851 F.2d 127, 131 (6th Cir. 1987).

Because Shaw is not entitled to relief under 28 U.S.C. § 2241, the petition is DISMISSED. Petitioner's motion for summary judgment is DENIED. The motion for release on bail pending a determination of the petition is DENIED as moot.

Appeals of habeas petitions under 28 U.S.C. § 2254 and motions under 28 U.S.C. § 2255 are governed by 28 U.S.C. § 2253 and require the district court to consider whether to issue a certificate of appealability. Stanford v. Parker, 266 F.3d 342 (6th Cir. 2001); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063 (6th

13

Cir. 1997). Section 2253 does not apply to habeas petitions by federal prisoners under § 2241. McIntosh v. United States Parole Comm'n, 115 F.3d 809, 810 (10th Cir. 1997); Ojo v. Immigration & Naturalization Serv., 106 F.3d 680, 681-82 (5th Cir. 1997); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). Nevertheless, a habeas petitioner seeking to appeal is still obligated to pay the $455 filing fee required by 28 U.S.C. §§ 1913 and 1917. Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915, it is unclear how habeas petitioners establish a right to proceed in forma pauperis and avoid this filing fee.

Although the Sixth Circuit has concluded that the various filing fee payment requirements and good faith certifications of amended § 1915 do not apply to § 2254 cases, it has not resolved whether those requirements apply to § 2241 cases. Kincade v. Sparkman, 117 F.3d 949, 951-52 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases, without mentioning § 2241 petitions).

The Tenth Circuit, however, has held that the provisions of the PLRA do not apply to habeas cases of any sort or to § 2255 motions. See McIntosh, 115 F.3d at 810; United States v. Simmonds, 111 F.3d 737, 743 (10th Cir. 1997). An unpublished Sixth Circuit opinion has adopted this approach in affirming a decision from this district. Graham v. United States Parole Comm'n, No. 96-6725, 1997

14

WL 778515 (6th Cir. Dec. 8, 1997), aff'g Graham v. United States, No. 96-3251-Tu (W.D. Tenn. Dec. 4, 1996). Because the Court finds the reasoning of McIntosh persuasive and finds that this conclusion naturally follows from the Sixth Circuit's decision in Kincade, the Court concludes that the PLRA does not apply to § 2241 petitions. Cf. Greene v. Tennessee Dep't of Corrections, 265 F.3d 369 (6th Cir. 2001) (certificate of appealability requirement is applicable to state prisoner bringing § 2241 petition).

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions. Kincade, 117 F.3d at 951. Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court dismissed the petition, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if Petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 28th day of September, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE